Eric M. Schiffer, Esq. (SBN 179695)
emschiffer@wolfewyman.com
Eric T. Lamhofer, Esq. (SBN 115865)
etlamhofer@wolfewyman.com
WOLFE & WYMAN LLP
5 Park Plaza, Suite 1100
Irvine, California 92614-5979
Telephone:  (949) 475-9200
Facsimile:   (949) 475-9203

Attorneys for Defendant/Cross-Claimant
IMPAC FUNDING CORPORATION
dba IMPAC LENDING GROUP

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOMINIC CONCETTI by his Guardian Ad Litem, , SHARON FRASER,<br><br>    Plaintiff,<br><br>  v.<br><br>IMPAC FUNDING CORPORATION, a California corporation, dba IMPAC; UNIVERSAL MORTGAGE AND SALES, INC., a California corporation; RAYMOND FLORES, an individual; and ERIK S. GONZALES, an individual,<br><br>    Defendants.<br><hr><br>IMPAC FUNDING CORPORATION dba IMPAC LENDING GROUP,<br><br>    Cross-Claimant,<br><br>  v.<br><br>UNIVERSAL SALES & MORTGAGE, INC., RAYMOND FLORES, an individual, ERIK S. GONZALES, an individual;<br><br>    Cross-Defendants. | Case No. C07-05410 JW<br><br>**PROOF OF SERVICE OF CROSS-CLAIM OF IMPAC FUNDING CORPORATION DBA IMPAC LENDING GROUP TO CROSS-DEFENDANT RAYMOND FLORES**<br><br>**(Electronic Filing)** |

///

1

I, Kathy Hagmaier, declare:

I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action. My business address is 5 Park Plaza, Suite 1100, Irvine, California 92614-5979. On January 9, 2008, I served the document(s) described as **CROSS-CLAIM OF IMPAC FUNDING CORPORATION DBA IMPAC LENDING GROUPS, ETC. ON CROSS-DEFENDANT RAYMOND FLORES** on the interested parties as follows:

CHARLES M. STANDARD, ESQ.
58 Quail Hollow Drive
San Jose, CA 95128
(408) 377-6930

Attorney for Raymond Flores

☒ **BY ELECTRONIC ACCESS** Pursuant to Electronic Filing Court Order, I hereby certify that the above document(s) was uploaded to the CONCETTI v. IMPAC FUNDING CORPORATION website and will be posted on the website by the close of the next business day and the webmaster will give e-mail notification to all parties.

☒ **FEDERAL**   I declare that I am employed in the offices of a member of the State Bar of this Court at whose direction the service was made.

Executed on January 9, 2008, at Irvine, California.

Kathy Hagmaier

1  Eric M. Schiffer, Esq. (SBN 179695)
   emschiffer@wolfewyman.com
2  Eric T. Lamhofer, Esq. (SBN 115865)
   etlamhofer@wolfewyman.com
3  WOLFE & WYMAN LLP
   5 Park Plaza, Suite 1100
4  Irvine, California 92614-5979
   Telephone: (949) 475-9200
5  Facsimile:  (949) 475-9203

6  Attorneys for Defendant/Cross-Claimant
   IMPAC FUNDING CORPORATION
7  dba IMPAC LENDING GROUP

8              UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11  DOMINIC CONCETTI by his Guardian Ad Litem, , SHARON FRASER, | Case No. C07-05410 JW |
| 12 | CROSS-CLAIM OF IMPAC FUNDING CORPORATION DBA IMPAC LENDING GROUP FOR: |
| 13             Plaintiff, | |
| 14     v. | 1.  **Breach of Written Broker Agreement;** |
| 15  IMPAC FUNDING CORPORATION, a California corporation, dba IMPAC; UNIVERSAL MORTGAGE AND SALES, INC., a California corporation; RAYMOND FLORES, an individual; and ERIK S. GONZALES, an individual, | 2.  **Implied Indemnity;** |
| 16 | 3.  **Total Equitable Indemnity;** |
| 17 | 4.  **Contribution and/or Apportionment;** |
| 18             Defendants. | |
| 19 | 5.  **Declaratory Relief** |
| 20  IMPAC FUNDING CORPORATION dba IMPAC LENDING GROUP, | [FRCP 13(g)] |
| 21 | |
| 22             Cross-Claimant, | |
| 23     v. | |
| 24  UNIVERSAL SALES & MORTGAGE, INC., RAYMOND FLORES, an individual, ERIK S. GONZALES, an individual; | |
| 25 | |
| 26             Cross-Defendants. | |

27

28  ///

---

1

TO CROSS-DEFENDANTS UNIVERSAL SALES & MORTGAGE, INC., RAYMOND FLORES, ERIK S. GONZALES, AND ROES 1 – 10, INCLUSIVE:

Comes Now Defendant and Cross-Claimant Impac Funding Corporation dba Impac Lending Group ("hereinafter "Cross-Claimant") who complains and alleges, as follows:

### STATEMENT OF JURISDICTION, PARTIES, AND PROCEEDINGS

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1367(a), in that it involves claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

2. Personal Jurisdiction of this Court is invoked pursuant to FRCP 4(k), in that Cross-Defendants Universal Sales & Mortgage, Inc., Raymond Flores, Erik S. Gonzales, are found within 100 miles of the place from where the summons is issued.

3. Venue properly lies with this Court pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated in the Northern District of California.

4. Defendant and Cross-Claimant Impac Funding Corporation dba Impac Lending Group ("IMPAC") is a corporation duly organized and existing under the laws of California, which conducts business in the State of California, and the Northern District of California.

5. Defendant and Cross-Defendant Universal Mortgage & Sales, Inc. ("Universal"), is a corporation duly organized and existing under the laws of California, which conducts business in the State of California, and the Northern District of California.

6. Defendant and Cross-Defendant Raymond Flores ("Flores") is an

individual residing in the State of California, Northern District of California.

7. Defendant and Cross-Defendant Erik S. Gonzales ("Gonzales") is an individual residing within the State of California, Northern District of California.

8. Cross-Claimant is informed and believes, and thereon alleges, that Cross-Defendant Flores was an individual over 18 years of age and a real estate salesperson licensed by the State of California and doing business in Santa Clara County.

9. Cross-Claimant is informed and believes, and thereon alleges, that Cross-Defendant Gonzales was an individual over 18 years of age and a real estate broker licensed by the State of California and doing business in Santa Clara County.

10. Cross-Claimant is informed and believes, and thereon alleges, that at all relevant times, Universal was duly licensed by the State of California, Department of Real Estate, as a real estate broker and doing business in Santa Clara County.

11. Cross-Claimant is unaware of the true names and capacities, whether corporate, individual, associate, or otherwise of other third-party defendants, and therefore brings this Cross-Complaint against defendants by fictitious names ROES 1 through 10, inclusive. When Cross-Claimant ascertains the identities and exact nature of such fictitious Cross-Defendants, it will seek leave of this Court to amend this Cross-Claim to assert the true names thereon.

## ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

12. Cross-Claimant is informed and believes, and thereon alleges, that Plaintiff Dominic Concetti ("Plaintiff") retained Universal to assist him in obtaining funds to refinance the real property located at 680 Clara Vista Avenue, San Jose, California 95050 (the "Subject Property"). Flores on behalf of Universal and Gonzales, acted as the loan officer on that transaction.

13. Cross-Claimant is informed and believes, and thereon alleges, that on or about October 23, 2006, Plaintiff obtained loan No. 2503189657 in the principal

amount of $528,000.00 (the "Subject Loan") from IMPAC via the loan brokerage activities of Flores acting on behalf of the Universal and Gonzales.

14. Cross-Claimant is informed and believes, and thereon alleges, that pursuant to the Subject Loan, Plaintiff executed a Promissory Note dated October 26, 2006 (the "Subject Note") in favor of IMPAC, whereby Plaintiff Dominic Concetti agreed to pay $528,000.00, plus interest thereon, in accordance with the terms of the Subject Note.

15. Cross-Claimant is informed and believes, and thereon alleges, that on or about October 23, 2006, Plaintiff executed a Deed of Trust in favor of IMPAC in order to secure payment of the Subject Note.

16. On or around October 23, 2007, Plaintiff filed his initial Complaint seeking to rescind the Subject Loan attached to the Subject Property, and to obtain both monetary and equitable relief under federal statutes such as the Truth in Lending Act and the Real Estate Settlement Procedures Act, as well as, under California law. Cross-Defendants Universal, Flores and Gonzales, as well as IMPAC, are named as Defendants in that Complaint. Plaintiff's Complaint and any future amendments thereto and any Cross-Claims filed in this action are incorporated herein by reference as though fully set forth herein, for identification and informational purposes only; by so doing, Cross-Claimant does not admit the truth of any allegations contained therein.

17. Cross-Claimant has denied the allegations of Plaintiff's Complaint; however, without admitting the allegations contained therein, Cross-Claimant is informed and believes, and thereon alleges, that the damages of Plaintiff, if any, were proximately caused by the actions, breaches, and omissions of Cross-Defendants and ROES 1 – 10, and each of them, in that Cross-Defendants and ROES 1 – 10, and each of them, are completely and solely liable for the damages sought by Plaintiff, and that the conduct, if any, of Cross-Claimant and ROES 1 – 10, and each of them, were passive, secondary, remote, and derivative in nature.

18.     Cross-Claimant is informed and believes, and thereon alleges, that it entered into a written broker agreement with Universal and ROES 1 – 10, and each of them. That agreement is attached hereto as Exhibit "A" and incorporated herein by reference as though fully set forth herein.

19.     By this action, Cross-Claimant herein demands that Cross-Defendants and ROES 1 – 10, and each of them, defend, indemnify, and hold harmless Cross-Claimant against any and all claims, losses, liabilities, and damages alleged by Plaintiff for all sums paid by way of settlement, a judgment or otherwise in the principal action herein.

### FIRST CLAIM FOR RELIEF
(For Breach of Written Broker Agreement Against Cross-Defendant Universal Sales & Mortgage, Inc. and ROES 1 – 10)

20.     Cross-Claimant repeats, realleges, and incorporates herein by reference, the allegations set forth in paragraphs 1 through 19, inclusive, as though fully set forth herein.

21.     Cross-Claimant is informed and believes, and thereon alleges, that it entered into a written Mortgage Broker Agreement (the "Agreement"), dated June 13, 2006 Universal, and which was executed by Gonzales, Universal's President, on behalf of Universal. Cross-Claimant is informed and believes, and thereon alleges, that the Agreement contains Broker's warranties, including, but not limited to, Section 2, which provides, in pertinent part:

> Broker represents and warrants to ILG at the time any mortgage loan Package is submitted to ILF, at the time that any mortgage loan is funded and closed and at the time any mortgage loan is purchased by ILG, that:

> B. No predatory, abusive or deceptive lending practices,

5

including but not limited to, the extension of credit to a mortgagor without regard for the mortgagor's ability to repay the mortgage loan and the extension of credit to a mortgagor which has no apparent benefit to the mortgagor, were employed in connection with the origination of the mortgage loan.

C. None of the statements or information contained in any mortgage loan Package will contain any untrue or erroneous statement or omission of a material fact that would, in any way, affects ILG's mortgage loan application review and approval. Broker understands that by making the warranty contained in this paragraph, it is warranting the accuracy of all information contained in any loan Package submitted to ILG, whether or not Broker has knowledge or reason to suspect any inaccuracy or omission. Broker acknowledges that the information in the Packages may be subject to ILG's independent verification, underwriting approval or quality control review but that this shall not affect Broker's duties, responsibilities, representation and warranties hereunder and Broker shall not be entitled to rely on such actions of ILG to in any way relieve Broker of his responsibilities, representations and warranties herein.

The Agreement further contains an indemnity provision in Section 4, which states:

Broker shall agree to indemnify and hold harmless ILG and its shareholders, directors, officers, agents, attorneys, employees, successors and assignees from and against (and shall reimburse the same with respect to) any and all loss, damage, liability, cost

and expense, including reasonable attorney's fees incurred by reason of, or arising out of, or in the connection with:

A. Any breach of any representation or warranty contained in this Agreement; or

B. Broker's failure to perform any obligation hereunder, or ... .

22. By way of, but not limited to, the allegations set forth in Plaintiff's Complaint, Cross-Defendants and ROES 1 – 10, and each of them, breached the Agreement with Cross-Claimant.

23. Cross-Claimant has performed all the terms and conditions under the Agreement.

24. As a direct and proximate result of Cross-Defendants and ROES 1 – 10, and each of their breach of the Agreement, Cross-Claimant has been damaged, including reasonable attorney's fees and expenses incurred in enforcing its rights.

## SECOND CLAIM FOR RELIEF

(For Implied Indemnity Against all Cross-Defendants and ROES 1 – 10)

25. Cross-Claimant repeats, realleges, and incorporates herein by reference, the allegations set forth in paragraphs 1 through 24, inclusive, as though fully set forth herein.

26. Cross-Claimant is informed and believes, and thereon alleges, that Cross-Defendants and ROES 1 – 10, and each of them, were intentionally false, negligent, careless, and reckless in a manner which was the proximate cause of the injuries and damages sustained by Plaintiff herein.

27. Cross-Claimant is informed and believes, and thereon alleges, that it is entitled to partial indemnity and full indemnity from Cross-Defendants and ROES 1 – 10, and each of them, in an amount equal to Cross-Claimant's damages, which

are attributable to the acts and omissions of Cross-Defendants, and ROES 1 – 10, and each of them.

### THIRD CLAIM FOR RELIEF

(For Total Equitable Indemnity against all Cross-Defendants and ROES 1 – 10)

28. Cross-Claimant repeats, realleges, and incorporates herein by reference, the allegations set forth in paragraphs 1 through 27, inclusive, as though fully set forth herein.

29. Cross-Claimant is informed and believes, and thereon alleges, that the damages incurred by Cross-Claimant arose as a result of the negligent and/or intentional and/or reckless acts of Cross-Defendants, and ROES 1 – 10, and each of them, set forth herein.

30. Cross-Claimant is informed and believes, and thereon alleges, that as a result of the foregoing, Cross-Claimant is entitled to a judgment against Cross-Defendants, and ROES 1 – 10, and each of them, to the full extent that Cross-Defendants, and ROES 1 – 10, and each of them, will be found to have been responsible in some way or manner and to some degree and extent as herein alleged in causing the damages for which Cross-Claimant seeks recovery.

### FOURTH CLAIM FOR RELIEF

(Contribution and/or Apportionment against all Cross-Defendants and ROES 1 – 10)

31. Cross-Claimant repeats, realleges, and incorporates herein by reference, the allegations set forth in paragraphs 1 through 30, inclusive, as though fully set forth herein.

32. Cross-Claimant is informed and believes, and thereon alleges, that the conduct of Cross-Defendants, and ROES 1 – 10, and each of them, contributed in an undetermined percentage to the losses allegedly sustained. Cross-Claimant is further informed and believes, and thereon alleges, that it is entitled to contribution from and

1  apportionment of, liability of Cross-Defendants, and ROES 1 – 10, and each of them,
2  to the extent that the legally responsible conduct of Cross-Defendants, and ROES 1 –
3  10, and each of them, proximately caused and contributed to the losses alleged and
4  sustained, so that the liability is ultimately assessed among the parties in direct
5  proportion to the percentage of fault attributable to the conduct of Cross-Defendants,
6  and DOES 1 – 10, and each of them.
7      33.   Cross-Claimant is informed and believes, and thereon alleges, that it is
8  entitled to contribution from Cross-Defendants, and ROES 1 – 10, and each of them,
9  for the injuries and damages sustained by Plaintiff, if any, as a result of any judgment
10  or settlement awarded against Cross-Claimant herein.

## FIFTH CLAIM FOR RELIEF
(Declaratory Relief Against all Cross-Defendants and ROES 1 – 10)

14      34.   Cross-Claimant repeats, realleges, and incorporates herein by reference,
15  the allegations set forth in paragraphs 1 through 33, inclusive, as though fully set
16  forth herein.
17      35.   A dispute has arisen and an actual controversy now exists between
18  Cross-Claimant and Cross-Defendants, and ROES 1 – 10, and each of them, in that
19  Cross-Claimant contends that it is entitled to indemnity, and contribution
20  and/or apportionment, while Cross-Defendants, and ROES 1 – 10, and each of them,
21  deny such obligations.
22      36.   Cross-Claimant desires a judicial determination of its respective rights
23  and Cross-Defendants', and ROES 1 – 10's, and each of them, duties in conjunction
24  with the matters herein alleged and a judgment in Cross-Claimant favor as to any
25  obligations by Cross-Defendants, and ROES 1 – 10, and each of them, to Cross-
26  Claimant.
27  ///
28  ///

**WHEREFORE**, Cross-Claimants pray that judgment be entered as follows:

### FIRST CLAIM FOR RELIEF FOR BREACH OF WRITTEN BROKER AGREEMENT

1. For general damages in an amount to be proven at trial;
2. For reasonable attorney fees and costs incurred herein;
3. For interest at the legal rate.

### SECOND CLAIM FOR RELIEF FOR IMPLIED INDEMNITY

1. For general damages in an amount to be proven at trial;
2. For reasonable attorney fees and costs incurred herein;
3. For interest at the legal rate.

### THIRD CLAIM FOR RELIEF FOR TOTAL EQUITABLE INDEMNITY

1. For general damages in an amount to be proven at trial;
2. For reasonable attorney fees and costs incurred herein;
3. For interest at the legal rate.

### FOURTH CLAIM FOR RELIEF FOR CONTRIBUTION AND/OR APPORTIONMENT

1. For general damages in an amount to be proven at trial and assessed among the parties in direct proportion to the percentage of fault attributable to the conduct of Cross-Defendants, and ROES 1 – 10, and each of them;
2. For reasonable attorney fees and costs incurred herein;
3. For interest at the legal rate.

### FIFTH CLAIM FOR RELIEF FOR DECLARATORY RELIEF

1. For a declaration that Cross-Defendants, and ROES 1 – 10, and each of them, are responsible for any sums awarded to Plaintiff;
2. For a declaration that Cross-Defendants, and ROES 1 – 10, and each of them, have a duty to indemnify Cross-Claimants in the underlying action;
3. For a declaration that Cross-Defendants, and ROES 1 – 10, and each of them, are responsible for and must indemnify, defend, and hold harmless Cross-

Claimants from and against any and all damage, loss, liability, cost, actions, causes of action, claims, demands or expense both direct and indirect (including without limitation reasonable legal and accounting fees and expenses actually incurred) by whomever asserted arising out of the underlying action;

    4.    For a declaration of the amount for which Cross-Defendants, and ROES 1 – 10, and each of them, is obligated to indemnify Cross-Claimants or to contribute.

### ALL CLAIMS FOR RELIEF

1. For costs of suit herein;
2. For such other further relief as the Court deems just and proper.

DATED: November 29, 2007    WOLFE & WYMAN LLP

By: _____
ERIC M. SCHIFFER
ERIC T. LAMHOFER
Attorneys for Defendant/Cross-Claimant
**IMPAC FUNDING CORPORATION**

# EXHIBIT "A"



**IMPAC LENDING GROUP
BROKER AGREEMENT**

THIS AGREEMENT is entered into the State of California this 13th day of June, 2004 between Impac Lending Group, hereinafter referred to as "ILG", and Universal Mortgage and Sales, Inc hereinafter referred to as "Broker."

WHEREAS, the parties wish to establish a non-exclusive relationship between and for the benefit of ILG and Broker, Broker will submit to ILG, from time to time, selected and completed applications of eligible applicants for mortgage loans for review, underwriting and potential approval by ILG.

AGREEMENT

NOW, THEREFORE, in consideration of the promises, covenants and agreements hereinafter contained, the parties agree as follows:

1. **General Broker Responsibility:**

Broker shall perform all of the following duties and functions at Broker's sole expense and Broker agrees to truthfully provide and perform these conditions in addition to the other promises, representations and covenants contained herein:

A. Submit to ILG completed mortgage loan application packages ("Packages") from applicants using such forms and under such programs, procedures and fee schedules as ILG periodically may establish.

B. For any loan application that utilizes the Impac automated underwriting system ("IDASL") offered to Broker by ILG for the purpose of issuing credit approval, Broker has properly input into IDASL all income, debt and other information as stated on the loan application and as required by Impac underwriting guidelines. Broker represents and warrants that all information provided to IDASL are true, complete and accurate in all material respects. Broker further represents and warrants that the Packages when submitted to ILG will contain all complete information as required by the IDASL Underwriting Status Notification.

C. Furnish ILG the applicant's credit, financial and other information as ILG may require.

D. Provide such additional information as ILG may reasonably request to assist ILG in marketing the mortgage loans to the secondary market. Broker understands that such a request may occur after the closing of the mortgage loan by ILG.

E. Perform such other services as ILG shall require to close the mortgage loans.

F. Provide a written evaluation of why any approved applicant fails to close a mortgage loan.

G. Comply with all applicable local, state and federal laws, including but not limited to, Real Estate Settlement Procedure Act, the Equal Credit Opportunity Act, the Truth in Lending Act, the Fair Credit Reporting Act and any other governmental regulatory requirements relevant to brokerage of real property secured loan applications in each jurisdiction where the real property securing the promissory note is located.

2. **Broker's Warranties:**

Broker represents and warrants to ILG at the time any mortgage loan Package is submitted to ILG, at the time that any mortgage loan is funded and closed and at the time any mortgage loan is purchased by ILG, that:

A. Mortgage loan is not (a) subject to the provisions of the Homeownership and Equity Protection Act of 1994 as amended ("HOEPA"), (b) a "high cost" mortgage loan, "covered" mortgage loan or "predatory" mortgage loan under any federal, state or local law, or (c) subject to any comparable federal, state or local statutes or any other statute or regulation providing assignee liability to purchasers or holders of such mortgage loans.

B. No predatory, abusive or deceptive lending practices, including but not limited to, the extension of credit to a mortgagor without regard for the mortgagor's ability to repay the mortgage loan and the extension of credit to a mortgagor which has no apparent benefit to the mortgagor, were employed in connection with the origination of the mortgage loan.

C. None of the statements or information contained in any mortgage loan Package will contain any untrue or erroneous statement or omission of a material fact that would, in any way, affects ILG's mortgage loan application review and approval. Broker understands that

Exhibit "B" – Wholesale Broker Agreement
ILG Rev 1/19/05



by making the warranty contained in this paragraph, it is warranting the accuracy of all information contained in any loan Package submitted to ILG, whether or not Broker has knowledge or reason to suspect any inaccuracy or omission. Broker acknowledges that the information in the Packages may be subject to ILG's independent verification, underwriting approval or quality control review but this shall not affect Broker's duties, responsibilities, representation and warranties hereunder and Broker shall not be entitled to rely on such actions of ILG to in any way relieve Broker of his responsibilities, representations and warranties herein.

D. Unless otherwise exempt, Broker is in compliance with all business licensing requirements to do business in the state(s) in which Broker originates any mortgage loan and possesses and agrees to maintain as valid, all necessary licenses, permits, and authority to engage in activities contemplated by this agreement.

E. Unless disclosed to ILG in writing before the funding of any mortgage loan, Broker shall not receive any direct or indirect payment from any person other than the applicant with respect to the mortgage loan, including, without limitation, a payment involving escrow, appraisal or sale, and Broker (and Broker's agents, employees, officers and directors) shall have no direct or indirect ownership in any property intended as security for the mortgage loan being reviewed by ILG for purposes of purchase.

F. Broker, if it is a corporation, is duly organized, validly existing and in good standing under the laws of the jurisdiction of its incorporation, and has full power and authority to own its assets and carry on its business as it is now being conducted, and is duly qualified to transact business where such qualification is required.

G. All real estate appraisals made in connection with each mortgage loan shall have been performed in accordance with ILG's Underwriting Guidelines and in accordance with industry standards in the appraising industry in the area where the appraised property is located and accurately represents the value of the appraised property.

H. That all mortgage loan applications submitted to ILG will be originated and prepared by trained employees of Broker, competent in all relevant aspects of mortgage lending activities and will be properly originated, prepared and completed in accordance with the procedures and guidelines of ILG which shall be known to Broker. Further, Broker agrees to deliver to ILG any and all exhibits or documents obtained or prepared by the Broker in connection with each loan submitted.

I. Broker understands and agrees that the use and findings of the IDASL system are limited to approved parties only. The use and disclosure of IDASL results and notifications to anyone other than ILG or the related Borrower is strictly prohibited. Broker understands that the graphic and textual materials (including screen displays and format) are the subject of copyrights owned by ILG and licenses under those copyrights are extended only to Broker for the submission of information to ILG.

J. That Broker has the requisite authority and capacity to enter into this Agreement.

**3. Broker is an Independent Contractor:**

Broker acknowledges that nothing in this Agreement shall be construed to create a joint venture between Broker and ILG. In addition, nothing in this Agreement shall be construed to make Broker a partner, agent, representative, or employee of ILG, and Broker shall not hold itself out as such. Broker may not use ILG's name in any advertising medium. Broker agrees that it shall conduct any and all business activities as an independent contractor to ILG. As an independent contractor, Broker shall determine the method, details and means of performing of all services described within this Agreement.

**4. Indemnification:**

Broker shall agree to indemnify and hold harmless ILG and its shareholders, directors, officers, agents, attorneys, employees, successors and assignees from and against (and shall reimburse the same with respect to) any and all loss, damage, liability, cost and expense, including reasonable attorney's fees incurred by reason of, or arising out of, or in connection with:

A. Any breach of any representation or warranty contained in this Agreement; or

B. Broker's failure to perform any obligation hereunder; or

C. Any claim by an applicant resulting from ILG's failure or refusal to fund a loan.

Without limiting the generality of the foregoing, in the event of any breach of any representation, warranty or covenant contained in this Agreement by Broker, Broker's indemnity shall extend to third party to which ILG has sold any loan or to any assignee thereof.

**5. ILG Obligation and ILG and/or its Contract Underwriter Has Sole Discretion to Approve Mortgage Loans:**

ILG agrees to review all packages submitted to them by Broker; however, mortgage loan approval (or the purchase of the mortgage loan) shall be within ILG's sole discretion. Broker shall not represent that ILG has approved or will approve any mortgage loan until Broker is so informed by ILG in writing. Mortgage loans shall close in the name of ILG and ILG shall appear on the promissory note as beneficiary. In the event that a mortgage loan application is denied, ILG shall cause to be delivered to Broker a statement of credit denial, termination or

Exhibit "B" – Wholesale Broker Agreement
ILG Rev 1/19/05

change. Broker agrees to inform Applicant of the adverse action on the mortgage loan application in accordance with the regulations of the Equal Credit Opportunity Act.

For all loans which are closed by ILG and which loans utilize IDASL for credit approval, ILG will review the mortgage loan prior to closing and determine if the loan meets all requirements. Broker acknowledges that failure of ILG to review or discover any deficiency or error in the mortgage loan or the loan file at time of closing by ILG will not release Broker from its obligations to provide any required documentation or correct any errors subsequently discovered. Nor will such a failure to review or discover deficiencies or errors prevent or inhibit ILG's exercise of any of its remedies hereunder.

6.  **Change in Underwriting Standards:**

Broker agrees that ILG's underwriting standards may be amended at any subsequent time upon reasonable prior written notice to Broker. Upon such change and written notice, Broker shall comply with all modified underwriting guidelines and modifications thereto. In the event ILG purchases a mortgage loan which does not comply with guidelines, the exception must be pre-approved in writing by ILG and ILG may purchase such loans at ILG's option and sole discretion; provided, however, that any such purchase shall not constitute a waiver of any other guidelines, except as to that loan, and shall not obligate ILG to purchase any other mortgage loans which do not strictly conform to said guidelines.

7.  **Inspection Rights of ILG:**

Broker agrees to keep and maintain its books and records as to mortgage loans hereunder so as to meet and comply with Federal and State laws and regulations. Broker hereby grants permission and authority to ILG to audit said files. Broker understands that ILG will maintain an active Quality Control System and that ILG may routinely reverify pertinent credit documentation and appraisals submitted by Broker even after a loan is closed or sold to ILG.

8.  **Notices:**

All notices required herein shall be in writing and shall be deemed to have been given, made and received:
a.   one business day after the date of dispatch, if by facsimile with a confirmed transmission.
b.   one business day after deposit, if delivered by a nationally recognized courier service offering guaranteed, overnight delivery; or
c.   three business days after deposit in the United States mail, certified mail, postage prepaid, return receipt requested, at the addresses appearing below.

All notices required to be given may be given by registered or certified mail addressed as follows:

If to ILG:    Impac Lending Group            If to Broker:
              1401 Dove Street, Suite 100
              Newport Beach, CA 92660
              ATTN: Client Administration

Or at such other offices or addresses as either party shall inform the other in accordance with this paragraph.

9.  **No Assignment of Broker's Rights or Duties:**

Broker shall not have the right to assign any of its duties, obligations, or rights under this Agreement without the prior written consent of ILG, which consent is subject to ILG's sole discretion.

10. **Arbitration of Disputes, Attorneys Fees:**

Any controversy, claim or dispute among the parties arising out of this contract, or the breach thereof, shall be settled by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association in Orange County, California and judgment upon the award rendered by the Arbitrator may be entered in any court having jurisdiction, including the Superior Court of California, County of Orange. The fees and costs incurred in any such arbitration (exclusive of each parties attorneys fees and costs) shall be borne equally between the parties. However, the prevailing party from such arbitration shall be entitled to recover its attorney's fees in addition to any other relief to which it may be entitled. Should either party fail or refuse to pay its share of the fees and costs, then the non refusing party may advance those fees and costs and the non paying party shall then be deemed to have waived their right to participate in the binding arbitration and shall be precluded from participating in the arbitration unless and until they have reimbursed the advancing party. Any such reimbursement must be at least 14 days prior to the Arbitration Hearing date in order to cure the default of the non paying party.

11. **Entire Agreement:**

This Agreement constitutes the entire Agreement between the parties pertaining to the subject matter contained in it and supersedes all prior and contemporary Agreements, representations and understandings. No supplement, modification or amendment shall be binding unless executed by both parties, except where ILG has been specifically granted the right to do so hereunder. It is the intention of the

parties hereto that this Agreement shall be construed under and according to the substantive laws of the state of California and shall not be binding until executed by ILG. All questions regarding the validity, interpretation or performance of any of its terms, representations and warranties of any rights or obligations of the parties shall be governed by the laws of the State of California.

12. **Enforceability of Agreement:**

If any provision of this Agreement is held valid, void or unenforceable, the remaining provisions shall nevertheless continue in full force without being impaired or invalidated in any way.

13. **Further Acts of Parties:**

Each party shall perform any further acts and execute and deliver any documents that may be reasonably necessary to carry out the provisions of this Agreement.

14. **Captions:**

Any captions hereunder are for convenience or reference only and are not to be construed, confining or limiting in any way to the scope or intent of the provisions hereof.

15. **Waiver:**

The waiver of any breach, term, provision or condition of this Agreement shall not be construed to be a waiver of any other breach, term, provision or conditions. All remedies afforded by this Agreement, or breach hereof, shall be cumulative, that is, in addition to all other remedies provided herein at law or in equity.

16. **Attorney-in-Fact:**

Broker appoints ILG as their attorney-in-fact to do any and every act that Broker is obligated or required to do to effectuate the transfer and sale of mortgage loans to ILG. This shall include, but not be limited to, the right to sign or correct documents and do all those things necessary on behalf of Broker to carry out Broker's duties or obligations in any such transfer or sale.

Date: 7/19/06

IMPAC LENDING GROUP
By: _____
    Chris Sunderland
Its: Senior Vice President

BROKER:
By: _____ ERiK S. Gonzales
Its: Broker / President

Date: JuNe 13, 2006

Universal Mortgage and Sales, Inc.

Exhibit "B" – Wholesale Broker Agreement
ILG Rev 1/19/05

# CORPORATE RESOLUTION

I hereby certify that I am the Secretary of __Universal Mortgage and Sales, Inc.__, a corporation of the State of __CA__, and that as such Secretary, I have custody of the records of this Corporation, and by virtue of such action, the Board of Directors passed the following resolution at a meeting dated __June 13__, __2006__, which is now in force and is not in conflict with the Charter or Bylaws of the Corporation.

RESOLVED, that the officers and agents of this Corporation appointed and named below are hereby authorized in the name of and on behalf of the Corporation to enter into an agreement with Impac Mortgage Holdings, Inc. and its operating subsidiaries ("Impac") to sell and/or broker mortgage loans, and that these individuals are each and severally authorized to sign on said agreement and on behalf of the Corporation and to effect any changes with respect thereto.

FURTHER RESOLVED, that these individuals are each and severally authorized to enter into commitments with Impac and to execute any and all other documents on behalf of this Corporation.

FURTHER RESOLVED, this Corporation is authorized to sign an agreement as required by Impac.

FURTHER RESOLVED, that this authorization shall remain in force until Impac receives, at its office, a certified copy of a resolution of this Corporation to the contrary, revoking all previous authorizations heretofore given. The revocation of previous authorizations, with respect to said account, shall not affect the validity of any item signed by the person or persons, at the time authorized to act.

__Erik S. Gomez__
Authorized Agent (Typed Name/Signature)         Authorized Agent (Typed Name/Signature)

Authorized Agent (Typed Name/Signature)         Authorized Agent (Typed Name/Signature)

Authorized Agent (Typed Name/Signature)         Authorized Agent (Typed Name/Signature)

Authorized Agent (Typed Name/Signature)         Authorized Agent (Typed Name/Signature)

IN WITNESS WHEREOF, I have executed this resolution in my capacity as Secretary of this Corporation this __13__ day of __June__, in the year __2006__.

_____ Secretary _____

ELECTRONIC PROOF OF SERVICE
CONCETTI v. IMPAC FUNDING CORPORATION, et al.
Case No. C07 05410 JW

I, Kathy Hagmaier, declare:

I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action. My business address is 5 Park Plaza, Suite 1100, Irvine, California 92614-5979. On November 29, 2007, I served the document(s) described as **CROSS-CLAIM OF IMPAC FUNDING CORPORATION DBA IMPAC LENDING GROUP FOR:**

1. **Breach of Written Broker Agreement;**
2. **Implied Indemnity;**
3. **Total Equitable Indemnity;**
4. **Contribution and/or Apportionment;**
5. **Declaratory Relief**

[FRCP 13(g)] as follows:

JESSICA L. FRY, ESQ.
jessicaf@lawfoundation.org
KERSTIN ARUSHA, ESQ.
kerstina@lawfoundation.org
LAW FOUNDATION OF SILICON VALLEY
111 West Saint John Street, Suite 315
San Jose, CA 95113

Attorneys for Plaintiff
DOMINIC CONCETTI

☒   **BY ELECTRONIC ACCESS** Pursuant to Electronic Filing Court Order, I hereby certify that the above document(s) was uploaded to the CONCETTI v. IMPAC FUNDING CORPORATION website and will be posted on the website by the close of the next business day and the webmaster will give e-mail notification to all parties.

☒   **FEDERAL**   I declare that I am employed in the offices of a member of the State Bar of this Court at whose direction the service was made.

Executed on November 29, 2007, at Irvine, California.

Kathy Hagmaier